## TURNER *vs.* THE STATE OF GEORGIA.

1. Points relating to the number of grand jurors drawn and their competency should be made before the true bill is found, and not on the trial before the traverse jury, especially where the defendant is under a charge that apprises him that the case will go before the grand jury, by being under bond to appear or confined in jail to answer the offence at court.

(a) The provision of the code as to the number of grand jurors to be drawn, is directory and not mandatory upon the court.

(b) Statutes of Alabama and Mississippi and the decisions thereunder contrasted with those of this State.

(c) A substantial compliance with any requisition of the code or laws amendatory thereof, especially on the part of public officers, shall be deemed and held sufficient; and no proceeding shall be declared void for want of such compliance, unless expressly so provided by the enactment.

2. Where a plea in abatement to an indictment alleged that one Joseph A. Huger was drawn as a grand juror, and Joseph A. Huger, jr., served as such grand juror; that they were not the same person; and that upon the book in the clerk's office where the names of grand jurors were kept, the name of Joseph A. Huger appeared, but that of Joseph A. Huger, jr., did not; and where it was agreed that Joseph A. Huger was the only Huger selected to serve; that Joseph A. Huger, jr., served; that Joseph A. Huger was and had been for several years the quarantine physician of Savannah, resided in the county of Chatham, was over sixty years of age, and had never been known to serve on any jury in the county; and that Joseph A. and Joseph A., jr., were not one and the same person:

*Held* that, in the light of the facts, the plea in abatement was bad. The question was one of identity of persons, not of name, and there was enough to show that the person on the grand jury list, and who was drawn and summoned, was the same as the person who served.

3. There was no error in refusing to charge "that the defendant might be found guilty of assault and battery." Such a charge would have been too broad, without qualifying it by adding, if the facts do not make a case of assault with intent to murder or stabbing not in the defendant's own defence.

(a) Where a person is badly cut and stabbed with a knife, there is scarcely room to find the assailant guilty of a mere assault and battery.

4. The verdict is supported by the evidence and not contrary to law.

November 9, 1886.

Criminal Law. Jury and Jurors. Assault and Battery. Pleadings. Before Judge ADAMS. Chatham Superior Court. June Term, 1886.

Turner was indicted, together with one Studstill, for assault with intent to murder, charged to have been com-

mitted on William Sullivan. On the trial, Turner filed pleas in abatement, which are set out in the decision, and they were overruled. The evidence for the State showed, in brief, as follows: Sullivan was walking on a street in Savannah at night, when he met Turner and Studstill. He said good evening to Turner, to which the latter replied, "Go to h—l, you son of a b—h." Sullivan asked what he had said, and Turner repeated it. Sullivan slapped him in the face and started to walk off. Thereupon Turner cut him in the back with a knife, and as he turned, Studstill cut him in the neck and Turner cut him again in the face. Sullivan did not think he was badly hurt, and went home to change his clothes. In about fifteen or twenty minutes, he again met Turner and Studstill. He pointed his finger at Turner, and started to tell him he intended to prosecute him, when Studstill came from behind and struck him with a billy or loaded stick, and Turner cut him again.

The fact that Turner cut Sullivan was not denied, but the evidence for the defendant tended to show that Sullivan was the aggressor in both difficulties; that he struck both Turner and Studstill, and Turner struck him with his fist and Studstill with a stick; and that in the second rencounter Sullivan snapped a pistol at both, and in defending themselves against this, the cutting was done. The language attributed to Turner was denied.

The jury found the defendant guilty. He moved for a new trial on the following grounds:

(1) Because the verdict was contrary to law and evidence.

(2) Because the court overruled the pleas in abatement.

(3) Because the court refused to charge the jury that the defendant might be found guilty of assault and battery.

The motion was overruled, and the defendant excepted.

J. J. ABRAMS; GEO. A. MERCER, for plaintiff in error.

F. G. DUBIGNON, solicitor-general, for the State.

JACKSON, Chief Justice.

The plaintiff in error was convicted of the offence of an assault with intent to murder, and being dissatisfied, brings the case on assignments of error before this court.

1. The first assignment is, that the court erred in overruling a plea in abatement to the effect that the judge of the superior court drew more than thirty grand jurors, and that of those who found true the bill of indictment, four were among those drawn after thirty had been drawn, and that one Joseph A. Huger was drawn as a grand juror, and Joseph A. Huger, jr., served as such grand juror; that they are not the same persons, and that upon the book in the clerk's office where names of grand jurors appear, the name of Joseph A. Huger appears, but that of Joseph A. Huger, jr., does not. It was agreed that Joseph A. Huger is the only Huger name selected to serve, and that Joseph A Huger, jr., served; that Joseph A. Huger is and has been for years the quarantine physician of Savannah, resides in the county of Chatham, and is over sixty years of age; that Joseph A. and Joseph A., jr., are not one and the same person, and that Joseph A. Huger, quarantine officer, has never been known to serve on any jury in the county. The court held the plea in the light of the agreed facts bad, and the question made is, is it a good plea in abatement?

In 69 *Ga.* there are two decisions of this court bearing on the point. In *Williams vs. The State*, page 11 of that volume, it is intimated very strongly, if not decided outright, that points like these, relating to the competency of grand jurors, should be made before the true bill is found, and not on the trial before the traverse jury, especially where the defendant is under a charge that apprises him that the charge will go before the grand jury, by being under bond to appear. The same principle would apply

v 78-12

were he in jail to answer the offence at court. The reason is, that he must fight *in limine,* if he makes a point arising *in limine,* and not wait until the bill is found true and he is arraigned and on trial before the traverse jury.

So in *Stevenson vs. The State,* **69** *Ga.* 68, it is held that thirty-two, instead of thirty, grand jurors being drawn by the court, is not such an irregularity as would quash an indictment. It is argued by the counsel for plaintiff in error that the point was not in the case, and he attacked vigorously the ruling as not law. It was pressed before the court in *Stevenson's* case with equal vigor, and a unanimous bench held that it was the law, it being directory. Whether made clear in the assignment of errors or not, if the point be made so as to induce the court to allow argument upon it, to consider and deliberate upon it in consultation, and to decide it, it is too late, in the argument of another case years after, to attack the ruling for lack of a conclusively clear assignment of error when the case cited was argued. Besides, the case falls within the ruling in *Williams's* case, *supra,* and would require an earlier contest in order to be heard on such a point about the grand jurors. There was the drawing of record—numbers and all ;—a mere glance would see the number drawn and the order in which they were drawn ; and those sworn on the grand jury, whether drawn before or after thirty, were exhausted; and surely if the point ought to be taken before the bill was found, the slightest diligence would discover it, and a motion or objection make it before the court *in limine.*

But if all this be unsatisfactory, and if the decision in *Stevenson's and Williams's* case was reviewed, and open for review, as requested in the former case, we should hold the number directory and not mandatory upon the court.

The Alabama cases cited by plaintiff in error are upon a very mandatory and prohibitory statute, commanding the number to be drawn and forbidding the court in express terms to draw more. The Mississippi statute is more like

our own; but we prefer to follow our own line, made in the 69th *Ga. supra*, rather than that of the Mississippi court, even if the statutes were identical, which is not the case.    63 Ala. 59, 126, 163; 61 *Id.* 201, 207; 26 Miss. 73; Code of Georgia, §3911.    This Georgia law on its face shows that the act is directory, though it uses the language, "not less than 18 nor more than 30 names," and that the main object of the law was to rotate grand jury duty, it being directed that " all of which names . . . shall be deposited in apartment number two," having been drawn from number one; and directed again that, " when all the names shall have been drawn out of number one, then the drawing shall commence from number two and the tickets be returned to number one, and so on alternately, " thus showing beyond doubt that the Georgia statute, in respect to drawing jurors, looked to fairness and equality of jury service, and the makers of it never dreamed that the prisoner should quash a charge against him because the judge drew a few more than thirty and thus expedited the rotation of service.    The defendant's power to quash the indictment because sufficient regard was not paid to equality of service by grand jurors " was not in all their thoughts."

The wisdom of our legislators declared, on the contrary, that, " A substantial compliance with any requisition of the code, or laws amendatory thereof, especially on the part of public officers, shall be deemed and held sufficient, and no proceeding shall be declared void for want of such compliance, unless expressly so provided by the enactment."    Code, §4, sub-sec. 6.    It is not so provided in this enactment respecting drawing grand jurors; so that if this enactment be not even substantially complied with, it shall not be declared void.    It is believed that neither an Alabama nor a Mississippi court would declare a proceeding void in the teeth of a statute which declares that " no proceeding shall be declared void for want of such compliance unless expressly so provided by the enactment," when there is no such provision in the enactment.

2. The remaining part of the plea in abatement is

equally untenable. The question is not *indentitate nomi-nis*, but *indentitate personæ;* which was the person on the grand jury list, and was he drawn and did he serve after being summoned by the sheriff? If he was the senior Huger, then the plea, if in time, would be good; but if he was the junior Huger, then it is bad. Is there a doubt about it ? None, we think. The senior is a quarantine doctor, in the employment of the city; he is over 60 years of age; he was never seen or heard of on any jury in any court. Is it not beyond all reasonable doubt that the officers of the law, knowing all the people, never put him on the jury list in the box to be drawn out, and that the judge never drew him out? We see no shadow of doubt that he never was in that box and drawn out. There is only one other person bearing the same name. He is liable to serve, he was summoned to serve, he did serve; and it is folly to suggest that he is not the person because "jr." was not appended to his name. The presumption is that he is the man, and the defendant must show that he is not. So far from the presumption being overcome, it is established beyond doubt. *Chapman vs. The State*, 18 *Ga.* 736, 738; Wharton's Crim. Law, vol. 1, 597; *Hayes vs. The State*, 58 *Ga.* 35, 45.

3. There is no error in refusing to charge "that the defendant might be found guilty of assault and battery." It is too broad, to say nothing more. It should have been qualified by adding, if the facts do not make, beyond a reasonable doubt, a case of assault with intent to murder, or stabbing not in his own defence. Besides, the facts make anything but a simple assault and battery. When a man is badly cut up and stabbed with a knife, there is hardly room to edge in the more honest and braver offence of assault and battery. 22 *Ga.* 75–84; 41 *Id.* 485; 47 *Id.* 230; 52 *Id.* 607, 611; 55 *Id.* 48; 26 *Id.* 156, 159.

4. The verdict is supported by the evidence and not contrary to law.

Judgment affirmed